UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TERESA SULLIVAN,                           CASE NO. 1:07-CV-00331
                  PLAINTIFF                (BARRETT, J.)
                                           (HOGAN, M.J.)

            VS.

COMMISSIONER OF
SOCIAL SECURITY,
                  DEFENDANT

## REPORT AND RECOMMENDATION

Plaintiff filed her applications for disability insurance benefits (DIB) and supplemental security income (SSI) in March, 2004. She alleged an onset date of March 23, 2004. Plaintiff's applications were denied, both initially and upon reconsideration. Plaintiff then requested and obtained a hearing before an Administrative Law Judge (ALJ) at Cincinnati, Ohio on April 13, 2006. Plaintiff, who was represented by counsel, testified at the hearing. Following an unfavorable decision, dated June 26, 2006, Plaintiff processed an appeal to the Appeals Council, who refused review in February, 2007. Plaintiff then filed her Complaint with this Court in April, 2007, and sought judicial review of the final order of the Defendant Commissioner denying her benefits.

## STATEMENTS OF ERROR

Plaintiff asserts that the ALJ erred in several respects. She first argues that the ALJ erred in finding that she did not meet/equal Listing 4.04C. Plaintiff's second argument is that the ALJ failed to consider Plaintiff's chronic complaints of pain and in assessing her credibility. Third, Plaintiff contends that the ALJ erred by determining that Plaintiff could perform the full range of

light work. Finally, Plaintiff argues that the ALJ erred by finding that Plaintiff's low back impairment was not severe.

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified that she has pain which radiated down her arm, fatigue and weakness due to her heart impairment. She stopped working in March 2004 due to an occluded right coronary artery. A catheterization did not remove the blockage. She was treated with medications. Plaintiff further testified that she suffered from chest pain, both with exertion and at rest. Her chest pain was alleviated somewhat by lying down and taking nitroglycerin twice a day. She often napped during the day.

Plaintiff also complained of back pain. She stated that she had a bulging disc in her back at the L4-L5 level. Plaintiff reported spasms and numbness in her legs and she could not bend over. She estimated that she could only walk short distances, sit for about fifteen to twenty minutes, stand about ten minutes, and lift about ten pounds. (Tr. 350-66).

## OPINION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ concluded that Plaintiff has the severe impairment of coronary artery disease. The ALJ concluded that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry/push/pull up to 20 pounds occasionally and up to 10 pounds frequently; sit, stand and/or walk about 6 hours each per 8-hour workday (with normal breaks); never climb ladders/ropes/scaffolds; and occasionally stoop.

2

Tr. 20 (finding 5). The ALJ then found that Plaintiff was unable to perform her past relevant work as a certified nurse assistant. (Tr. 22, Finding 6). The ALJ then used section 202.21 of the Grid as a framework for deciding, and concluded that based on a residual functional capacity for the full range of light work, and considering the claimant's age, education, and work experience, she was not disabled. (Tr. 23, Finding 10). The ALJ concluded that Plaintiff was not disabled and therefore not entitled to benefits under the Act. (Tr. 23, Finding 11).

## MEDICAL RECORD

The Plaintiff's medical record begins with treatment in June 2003 with Sairam Atluri, M.D., a pain management specialist. (Tr. 177-78). She stated that she injured her back at work in January 2002. Plaintiff complained of pain in her back, going across her back equally on both sides with numbness and tingling in the left leg and leg cramps bilaterally. She stated that the pain woke her up at night and limited her to only 20% of her full function capability. Id. Examination revealed decreased range of motion of the lumbar spine on flexion, negative straight leg raising, normal gait, normal strength, normal reflexes, no sensory deficits, and positive Waddell's signs. Dr. Atluri diagnosed low back pain with possible radiculopathy and facet disease. Id. He recommended conservative treatment with facet and SI injections and prescribed methadone for pain. Id.

On August 22, 2003, Plaintiff went to the emergency room complaining of an exacerbation of her neck and back pain after a resident grabbed her ponytail and pulled and twisted her neck and upper back (Tr. 186-87). Examination revealed paraspinal cervical

3

tenderness on palpation going into both trapezius muscles and extending down the upper thoracic back, but the doctor noted no spasm and intact neurovascular function. *Id.* Dr. Atluri was called, and expressed concern that Plaintiff had been on methadone, without seeing him, and now presented to the emergency room for treatment. He instructed Plaintiff to come to his office for further treatment. *Id.* She was discharged with a diagnosis of cervical and thoracic strain. *Id.*

During her emergency room follow-up appointment with Dr. Atluri, he documented Plaintiff's decreased cervical range of motion, normal strength, no sensory deficits, normal gait, and exaggerated facial expressions. (Tr. 188). He found diffuse, severe tenderness in the spinous processes, paraspinal muscles, facets and bilateral trapezius and rhomboid muscles plus decreased range of motion of the neck. The thoracic MRI was normal. Dr. Atluri diagnosed low back pain with radiculopathy and facet disease and neck pain with radiculopathy. He prescribed methadone and Kadian (morphine). *Id.* Dr. Atluri advised Plaintiff to continue taking methadone, and he recommended lumbar epidural injections. *Id.*

In September 2003, Plaintiff reported that her neck pain was getting better, and that she was using methadone only sparingly, and that it was proving beneficial to her. (Tr., 190). Dr. Atluri reported normal examination findings. *Id.* In October 2003, Plaintiff complained of pain in her lower back and the thoracic area (Tr. 192). Dr. Atluri documented Plaintiff's negative straight leg raising, normal motor strength, no sensory deficits, normal gait, and evidence of symptom magnification. *Id.* Dr. Atluri commented that while Plaintiff's MRI showed some minor changes, it did not correlate with her complaints of pain. *Id.*

From November 13, 2003 through August 20, 2004, Dr. Atluri administered lumbar epidural injections and facet joint injections. (Tr. 195, 203-204, 207, 239-241).

4

In March 2004, Plaintiff commenced treatment with Sharon Nichols, M.D., due to complaints of chest pain and fatigue. (Tr. 128-32). Plaintiff's heart problems went back to 2001 when she started having chest pain associated with acid reflux. Plaintiff's current chest pain was associated with neck pain and left arm numbness. Dr. Nichols advised Plaintiff to stop smoking, and she referred Plaintiff to a cardiologist for further testing. *Id.*

On March 16, 2004, Plaintiff saw Santosh Menon, M.D., where she complained of chest pain with exertion that radiated to her left arm and neck. She smoked two packs of cigarettes per day. (Tr. 170-71). That same day, Plaintiff underwent a cardiac catheterization which revealed occlusive coronary disease in the RCA (right coronary artery), ;ong lesion with some collaterals from the left side, nonobstructive coronary lesions in the LAD (Left Anterior Descending Artery) proximally and mildly reduced left ventricular function. (Tr. 172). Revascularization was attempted but was unsuccessful. Plaintiff's narrowed right coronary artery was not amenable to angioplasty. (Tr. 226-27) She was diagnosed with chronic ischemic heart disease and advised to follow up with her cardiologist, Dr. Menon. (Tr., 118). Thereafter she was treated with medications. (Tr. 318, 320, 326).

Lynne Torello, M.D., and Maria Congbalay, M.D., reviewed the record evidence in July and September 2004, respectively, and concluded that Plaintiff could perform light work that involved no climbing of ladders, ropes, or scaffolds and could perform only occasional stooping (Tr. 231-35).

On November 22, 2004, Plaintiff complained to Dr. Atluri of worsening pain in the thoracic region in the middle which goes across equally to the mid axillary line. (Tr. 240). Dr. Atluri ordered another MRI and continued Plaintiff on Kadian. *Id.*

5

On January 30, 2005, Plaintiff's MRI of the thoracic spine revealed a large subacute Schmorl's node in the inferior endplate of T8 with evidence of surrounding bony edema. No compressive discopathy was noted. (Tr. 253). No central canal stenosis, foraminal stenosis or nerve root compression was noted. Left ventricular hypertrophy was found. *Id.*

On January 25, 2005, Plaintiff reported to Dr. Menon that she felt good and had only one episode of chest pain, which was relieved with one nitroglycerin tablet. (Tr. 315). Dr. Menon documented Plaintiff's clear lungs, trace edema, and the absence of murmurs. *Id.* Dr. Menon noted that Plaintiff's echocardiogram showed mild to moderate mitral regurgitation and an ejection fraction within normal limits. *Id.* Dr. Menon diagnosed chronic angina and nicotine addiction; he made no changes to Plaintiff's medications, and advised her to stop smoking. *Id.*

Dr. Menon treated Plaintiff from January to November of 2005. Treatment notes revealed that Plaintiff complained of some chest pain. (Tr. 315, 317, 318, 320, 322, 325, 326, 331). Examinations revealed trace edema. Dr. Menon diagnosed chronic angina which was not amenable to angioplasty. (Tr. 318, 320). Plaintiff was continued on Nitroglycerin. *Id.*

Pharmacy records showed that Plaintiff refilled her nitroglycerin prescription four times between her onset date and the date of the hearing. (Tr. 110-115).

On May 27, 2005, Plaintiff followed-up with Dr. Menon. (Tr. 317). She noted occasional chest pain, but it was fairly stable and she did not experience it at rest. *Id.* Plaintiff reported that her chest pain was never prolonged and it went away once she took a nitroglycerin tablet. *Id.* Dr. Menon concluded that Plaintiff's coronary artery disease was stable; he advised Plaintiff to continue taking her medications, to stop smoking, and to return in six months. *Id.*

In July 2005, Dr. Menon cleared Plaintiff to undergo surgery for a tubal ligation. (Tr. 318). He ordered an echocardiogram, which showed moderate mitral regurgitation, mild mitral annular calcification, mild aortic valve calcification, and a normal ejection fraction. (Tr. 319-20).

Dr. Menon wrote a narrative in September, 2005 in which he indicated that Plaintiff's chest pain was stable and that she experienced it only occasionally with exertion. (Tr. 320). He commented that Plaintiff experienced some shortness of breath, which he felt could be secondary to smoking. *Id.* Dr. Menon concluded that Plaintiff could not perform moderately strenuous work. She could perform work that involved lifting up to twenty pounds, as well as sedentary work at a desk. *Id.*

Dr. Menon wrote a second narrative in November 2005. (Tr. 237). He diagnosed Plaintiff with chronic angina with symptoms of frequent chest pain which was central in nature and radiated to her left arm. He noted that shortness of breath accompanied the chest pain. He felt that these symptoms were severe, and occurred with even minimal exertion, meaning that she was very debilitated. Dyspnea and anginal discomfort caused marked limitation of physical activity. He also concluded that Plaintiff was debilitated emotionally by her angina and physically impaired because of her limited activities. *Id.*

Dr. Menon saw Plaintiff November 23, 2005. (Tr. 322). Plaintiff complained of chest pain that required a lot of nitroglycerin. She has had no shortness of breath, PND or orthopnea. She stated that she could only walk about a quarter of a block before she experienced chest pain. *Id.* Dr. Menon referred Plaintiff to Dr. Behrens for TMR (transmyocardial revascularization with laser). There is no indication in the record that this procedure was performed.

Throughout 2005, Dr. Atluri continued to prescribe medications (Tr. 241-48). Plaintiff complained of low back pain with radiculopathy. Clinical findings included diffuse, severe

7

tenderness in the spinous processes, paraspinal muscles, facets and bilateral trapezius and rhomboid muscles (Tr. 186, 188, 239-241, 246, 249).

In October 2005, Dr. Atluri ordered a urine drug screen. (Tr. 250). The drug screen was negative for morphine, which had been prescribed for pain management. *Id.* Dr. Atluri noted that prior to the drug test, he asked Plaintiff when she had last taken her medication, and she responded that she had taken her medication the night before and that she took her medicine on a regular basis. *Id.* Dr. Atluri concluded that Plaintiff failed the drug screen because the medication did not show up on the screen, and he discharged her from care because she was non-compliant with her pain program. (Tr.,250, 252).

Plaintiff saw Scott Behrens, M.D. in April 2006 due to increased chest pain. (Tr. 326). She complained of palpitations, a racing heartbeat, and chest pressure which had occurred with increasing frequency and intensity over the past several weeks. She underwent a course of EECP without much long-lasting benefit. Dr. Behrens documented Plaintiff's regular pulse, no murmurs, rubs, or gallops, and no edema. *Id.* Dr. Behrens advised Plaintiff to stop smoking, and he stressed that there may be no modalities that will be completely beneficial as long as Plaintiff continued to smoke. *Id.* He diagnosed Plaintiff with single vessel coronary artery disease consisting of chronic occlusion of the RCA with refractory chronic anginal syndrome. *Id.* Dr. Behrens increased Plaintiff's doses of nitrates, and ordered stress testing, which showed a moderate area of reversible ischemia in the area of the occluded right coronary artery (Tr. 326-31).

The stress test conducted April 21, 2006 revealed a moderate-sized zone of ischemia in the distribution of the right coronary artery with an ejection fraction of 54%. (Tr. 327-29).

8

Plaintiff saw Dr. Behrens on April 25, 2006. She reported a marked improvement in her anginal symptoms after her medications were adjusted. She stated that she felt quite satisfied with her current condition. Dr. Behrens recommended that Plaintiff's current treatment with medications be continued since she appeared to be doing well. He again stressed the need to stop smoking. (Tr. 331).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389,401 (1971) (citing *Consolidated Edison Co.* v. *N.L.R.B.,* 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner* v. *Mathews,* 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(1),423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(I)(A). Second, the

9

impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2). Similarly, to qualify for SSI benefits, plaintiff must likewise file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months and plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix l. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1 520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden

10

of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley* v. *Secretary of H.H.S.,* 708 F.2d 1048 (6th Cir. *1983); Kirk* v. *Secretary of H.H.S.,* 667 F.2d 524 (6th Cir. 1981), *cert. denied, 461* U.S. 957 (1983).

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §404.1521(b). Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.,* 736 F.2d 352, 357 (6th Cir.1984). The severity requirement may be employed as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint. *Higgs v. Bowen,* No. 876189, slip op. at 4 (6th Cir. Oct.28, 1988). An impairment will be considered non severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.,*773 F.2d 85, 90 (6th Cir. 1985)(citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The Secretary'S decision on this issue must be supported by substantial evidence. *Mowery v. Heckler,* 771 F.2d 966 (6th Cir. 1985). Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.,* 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson,* 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to

11

perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999); *Born,* 923 F.2d at 1173; *Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiffs individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.,* 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson* v. *Secretary of Health & Human Services,* 735 F.2d 962,964 (6th Cir, 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner,* 587 F.2d at 323. *See also Cole* v. *Secretary of Health and Human Services,* 820 F.2d 768, 771 (6th Cir. 1987).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.,* 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.,* 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require ... 'objective evidence of the pain itself.' *Duncan,* 801 F.2d at 853. Where a complaint of pain is not fully supported by objective

medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiffs activities, the effect of plaintiffs medications and other treatments for pain, and the recorded observations of pain by plaintiffs physicians. *Felisky,* 35 F.3d at 1039·40.

Where the medical evidence is consistent, and supports plaintiffs complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler,* 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky, 35* F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky, 35* F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst* v. *Sec. of H.H.S.,* 753 F.2d 517, 519 (6th Cir, 1985)(citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)). "In general, the opinions of treating physicians are accorded greater weight those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 530-31 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985); *Lashley* v. *Secretary of*

13

*H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). The weight given a treating physician's opinion on

the nature and severity of impairments depends on whether it is supported by sufficient medical

data and is consistent with other evidence in the record. 20 C.F.R. § 404.I527(d); *Harris v.*

*Heckler,* 756 F.2d 431 (6th Cir. 1985). If a treating physician's "opinion on the issue(s) of the

nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see*

*also Walters,* 127 F.3d at 530. If not contradicted by any substantial evidence, a treating

physician's medical opinions and diagnoses are afforded complete deference. *Harris,* 756 F.2d at

435. *See also Cohen* v. *Secretary of H.H.S.,* 964 F.2d 524, 528 (6th Cir. 1992). The opinion of a

non-examining physician is entitled to little weight if it is contrary to the opinion of the

claimant's treating physicians. *Shelman v. Heckler,* 821 F.2d 316, 321 (6th Cir. 1987). If the AU

rejects a treating physician's opinion, the AU's decision must be supported by a sufficient basis

which is set forth in his decision. *Walter v. Commissioner,* 127 F.3d 525, 529 (6th Cir. 1997);

*Shelman,* 821 F.2d at 321.

## OPINION

Plaintiff's first assignment of error is that the ALJ erred in finding that she did not

meet/equal Listing 4.04C. The ALJ stated in his written decision that,

> The claimant's coronary artery disease does not result [in]
> impairment heart functioning severe enough to meet any applicable
> listing (see section 4.00 of the listings). The claimant's
> representative suggested that the claimant's cardiac impairment
> meets listing 4.04, but the record does not demonstrate the criteria
> in either 4.04A or 4.04B, and no doctor has concluded that a stress
> test would be dangerous to claimant, as required by 4.04C. In fact,
> the claimant had a stress test in April 2006 (apparently mistakenly
> dated April 2005).

14

(Tr. 20). Plaintiff argues that she meets part 1 of the listing by the catheterization in March of 2004 which showed blockage of the RCA at 100% and that attempted revascularization was unsuccessful. Plaintiff fails to mention that even though revascularaization was attempted in 2004, Dr. Behrens noted in 2006, that she should consider another attempt at opening up the chronic occlusion since new equipment has recently become available that increases the chance for success with that procedure. (Tr. 326). Also of note, Plaintiff saw Dr. Answini to consider transmyocardial revascularization with laser, but plaintiff declined. (Tr. 322, 326). Plaintiff further failed to show she meets the Listing by telling Dr. Menon that she was stable and only occasionally experienced chest pain that responded to nitroglycerin. (Tr. 315, 317, 320). Dr. Menon further concluded that Plaintiff could perform work as long as it was not moderately strenuous. (Tr. 320). Plaintiff's condition responded to an adjustment to her medications, and she stated that she was quite satisfied with her condition in 2005 and 2006. (Tr., 331).

Plaintiff has failed to prove that she met the requirements of Listing 4.04C. A claimant has the burden of proving that his or her impairments meet or equal the Listings. *Bowen v. Yuckert,* 482 U.S. 319 (1987). In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listed impairment. *See, Hale v. Secretary of Health and Human Services,* 816 F.2d 1078, 1083 (6th Cir. 1987), *citing, King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the requirements of Listing 1.05C provides substantial evidence to support the Secretary's finding that claimant did not meet the Listing). It is not sufficient to come close to meeting the requirements of a Listing. *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1989) (Secretary's decision affirmed where medical evidence almost establishes a disability under Listing 4.04(D)).

15

The second error assigned by Plaintiff's counsel is that the ALJ misevaluated Plaintiff's credibility and subjective reports of pain. The court finds this argument unavailing. The ALJ noted that treatment records showed that Plaintiff experienced only occasional episodes of chest pain and shortness of breath, and these episodes were relieved with nitroglycerin. (Tr. 22). The evidence showed no prolonged periods of worsening symptoms, and any exacerbations were quickly brought under control with medications. (Tr. 22). Plaintiff's treatment notes and the medical opinions of record do not support Plaintiff's argument.

In assessing Plaintiff's credibility, the ALJ noted Plaintiff's testimony at the hearing wherein she testified she has pain, fatigue and weakness from her heart impairment. The record shows that even though she complained of increased anginal symptoms on April 4, 2006, by April 25, 2006, she reported "doing well" (Tr. 331). The record does not contain further treatment notes showing her symptoms have worsened, contrary to her testimony. In 2005, Dr. Menon's records reveal that Plaintiff complained of only occasional episodes of chest pain, which was relieved with nitroglycerine. (Tr. 315, 317, 320). Dr. Menon further noted that Plaintiff's heart condition was not contributing to her shortness of breath Dr. Memon concluded that Plaintiff's shortness of breath was related to smoking. Plaintiff's primary argument regarding her credibility stems from her failure to follow medical advice to stop smoking. Contrary to Plaintiff's argument that the ALJ had no objective basis to discount her complaints, the ALJ noted and the records reflect that entries in her medical record for 2004 showed frequent no-shows and cancellations. The claimant has been told by her treating physicians to stop smoking. Dr. Behrens advised Plaintiff to stop smoking, and he stressed that there may be no modalities that will be completely beneficial as long as Plaintiff continued to smoke (Tr. 326).

16

Plaintiff also testified about a bulging disc at L4-5, but that fact was not documented in the record. The medical evidence of record showed essentially normal examination and MRI findings. (Tr. 178, 188, 190, 192, 195-208, 239-41, 253). Given this evidence, the ALJ reasonably failed to credit at face value Plaintiff's allegations of disabling pain. We have no quarrel with the ALJ's being quite suspicious of Plaintiff's pain to the extent that it depends on Plaintiff's subjective reports. We cannot find that his analysis was erroneous.

The third Statement of Error criticizes the ALJ's determination that Plaintiff could perform the full range of light work. Plaintiff argues that the ALJ cannot rely on the opinions of reviewing physicians to justify his residual functional capacity assessment. However, the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner may view nonexamining sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p. Consequently, opinions of one-time record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. §404.1572(d), (f).

We turn now to Plaintiff's argument that the ALJ improperly applied the Medical-Vocational Guidelines. The ALJ employed the Medical-Vocational Guidelines, also referred to as the "grid," in the fifth and final stage of the disability determination, after it has been determined that the claimant has not met the requirements of a Listed impairment but is nevertheless incapable of performing past relevant work. At this point, the Commissioner bears the burden of demonstrating that, notwithstanding the claimant's impairment, that she retains the residual functional capacity to perform specific jobs existing in the national economy. *Cole v.*

17

*Secretary of Health & Human Services*, 820 F.2d 768, 771 (6th Cir.1987); *Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir.1984).

Where a claimant suffers from an impairment limiting only his strength, the Commissioner can satisfy his burden, without considering direct evidence of the availability of jobs the particular claimant can perform, through reference to the Grid. *Abbott v. Sullivan,* 905 F.2d 918, 926 (6ᵗʰ Cir. 1990). The Grid aids the Commissioner in determining disability claims by allowing "administrative notice" to be taken of the existence of jobs in the national economy that those with particular combinations of the four statutory factors are capable of performing. *Id, citing, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 529 (6ᵗʰ Cir. 1981), *cert. denied,* 461 U.S. 975 (1983). In finding Plaintiff not disabled, the ALJ applied rule 202.21 which states that where "[m]aximum sustained work capability [is] limited to light work as a result of severe medically determinable impairment(s)," the claimant is under 50 years of age, has at least a high school education, and has experience performing skilled or semiskilled—skills not transferable, a finding of "not disabled" is directed.

In Plaintiff's final Statement of Error, she contends the ALJ erred by not finding her low back impairment to be a severe impairment. A severe impairment is one which significantly limits the physical or mental ability to perform basic work activities. *See,* 20 C.F.R. §§404.1521, 416.921. An impairment can be considered as not severe, and the application rejected at the second stage of the sequential evaluation process, only if the impairment is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience. *Farris v. Secretary of Health and Human Services,* 773 F.2d 85, 90 (6ᵗʰ Cir. 1985)(citation omitted).

18

An ALJ does not commit reversible error in finding a non-severe impairment where the ALJ determines that the claimant has at least one other severe impairment and then goes on with the remaining steps in the disability evaluation, since the ALJ considers all impairments, including non-severe impairments, in determining residual functional capacity. *See, Maziarz v. Secretary of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987).

In *Maziarz*, the ALJ determined that the claimant suffered from several severe cardiac impairments. The plaintiff argued the ALJ erred by not finding his cervical condition to be a severe impairment at step two of the sequential evaluation process. The *Maziarz* Court found it "unnecessary to decide" whether the ALJ erred in failing to find that the claimant's cervical condition constituted a severe impairment at step two because the ALJ continued with the remaining steps of the sequential evaluation process and considered the plaintiff's cervical condition in determining whether he retained a sufficient residual functional capacity to allow him to perform substantial gainful activity. Therefore, the Court concluded that any alleged error at step two was harmless. As long as the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two "[does] not constitute reversible error." *Maziarz*, 837 F.2d at 244. In other words, if an ALJ errs by not including a particular impairment as an additional severe impairment in step two of his analysis, the error is harmless as long as the ALJ found at least one severe impairment, continued the sequential analysis, and ultimately addressed all of the claimant's impairments in determining his residual functional capacity. *See Swartz v. Barnhart*, 188 Fed. Appx. 361, 368, 2006 WL 1972086, 6 (6th Cir. 2006) (citing *Maziarz*).

In the present case, the ALJ noted Plaintiff's January 2002 work injury. Plaintiff treated with Dr. Atluri, examined her and reported no abnormalities except decreased range of motion.

19

He also reported positive Waddell's signs, which often demonstrate symptom exaggeration. (Tr. 178). Dr. Alluri later noted in August 2003, that Plaintiff demonstrated exaggerated facial expressions. (Tr. 188). He further reported in November 2004 that an MRI done in 2003 had not shown any abnormalities. (Tr., 240). The MRI in January 2005 showed only a subacute Schmorl's node at T8 and a left ventricular hypertrophy, but did not show evidence of compressive discopathy, central canal stenosis, foraminal stenosis, or nerve root compression. (Tr. 253). Dr. Atluri treated Plaintiff with medication, but discharged her when the drug screen came back negative for morphine. He noted the claimant told him she had just taken the drug the night before and had been taking it on a regular basis. Dr. Atluri said that since multiple injections had not helped the claimant's pain, he had "nothing else to offer her." (Tr.,250, 252).

Dr. Atluri diagnosed radiculopathy, but the ALJ found this diagnosis was unsupported by any objective evidence, specifically normal MRIs and physical examinations (except reduced range of motion and subjective reports of paraspinal tenderness). The ALJ found no severe medically determinable impairment underlying Plaintiff's alleged back pain. (Tr. 21).

## CONCLUSION

Because substantial evidence supports the decision of the ALJ, we recommend that his decision be AFFIRMED and that this case be DISMISSED from the docket of the Court.

DATE

Timothy S. Hogan
United States Magistrate Judge

20

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS REPORT & RECOMMENDATION

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

J:\Batten\R&R.07-331.wpd

21